Good morning, honorable judges. May it please the court, Ali Shirara for the plaintiff appellant Jill Babcock. Quickly, by way of background, this is an ADA case and Jill Babcock is a licensed attorney in the State of Michigan who's diagnosed with Friedrich's ataxia, which is a very progressive and very rare form of MS, muscular, I'm sorry, MS, multiple sclerosis. That is a neurological disorder. It affects her ability to use all of her motor skills, including walking. She's confined to a wheelchair. Now, at the time that this suit was first brought, on July 2nd of 2012, Jill Babcock was an attorney working for the Michigan Economic Development Corporation, and she was working in the Cadillac Place Building, that is the building at issue now. An issue that will be addressed further in my argument is that now, at the present time, she's no longer employed by the MEDC, so she is no longer working in the Cadillac Place Building, but our argument remains the same. The Cadillac Place Building is a 1.3 million square foot building in the city of Detroit, Michigan. It's owned by the Michigan Strategic Fund, which is a public entity, and it is leased by the State of Michigan from the Michigan Strategic Fund. This is a building that has 2,000 state offices, a workers' compensation court, a Michigan Court of Appeals, banks, credit unions, restaurants, a subway, a barber shop. It is, by every stretch of the imagination, a public building for state purposes and for general business purposes. Now, the issues before this court are, first of all, if Jill Babcock has a direct claim against the State of Michigan and the Michigan Strategic Fund, and of course that would involve an abrogation of sovereign immunity to carry forward. The second claim can be hatched together with the first claim, and that's because the second issue is whether Jill Babcock has a claim under the Rehabilitation Act, but as was pointed out by the lower court, and I agree, both the ADA and the Rehabilitation Act are analyzed identically, so they either rise together or fall together. And then the third issue was the alternative argument Jill Babcock made in the lower court, and that was, if she doesn't have a claim because of sovereign immunity against the state, then under the Ex Parte Young Doctrine, can she amend her complaint to name individual state actors? This is a case seeking only prospective injunctive relief, and if the state parties were replaced with individual actors in their official capacity, then Ex Parte Young would say there would be no sovereign immunity issue. But I want to take it up from the top first with the sovereign immunity issue. For Jill Babcock to have a claim against the State of Michigan, she has to get past both the ADA and, according to the Supreme Court of the United States, she has to get past 14th Amendment as well. The first question is, does the ADA give an unequivocal express intent to abrogate sovereign immunity? No question there. In Section 12202 of the ADA, it says we expressly waive sovereign immunity. So the Supreme Court of the United States said, if that's the case, then we still have to find that a claimant has alleged a ADA violation and a 14th Amendment violation. When it comes to the ADA violation, the section that this case was brought under, Title II of the ADA, says that an individual with a disability cannot be denied reasonable access to the services, programs, or activities of the public entity. And to clarify what the statute means by programs, services, or activities, the Sixth Circuit said services, programs, or activities encompasses virtually, and this is a quote, everything that a public entity does. Virtually, I think, is the key word here. What service, program, or activity do you claim she was reasonably denied? Well, at the time the complaint was brought, access to the building where she worked. Okay, access. Okay, there's no specific service, no specific program, no specific activity that you claim she was denied? And I want to... Is there? If there is, tell me what it is and tell me where it is in the complaint. Your Honor, it's everything that goes on in the building. Okay, so there is nothing specific? There was her employment, and that was alleged in the complaint. But at the time this complaint was brought, she couldn't get into the building. You claim her employment is a service, program, or activity? I'm claiming that an office in a state building where an individual goes to work is an activity of the state that they should be allowed reasonable access to. Basically, you say that this Title II of the ADA prohibits unreasonable access. Is that it? That these words, service, program, and activity are superfluous? That what really it does is it prohibits access? Well, yes, Your Honor, and in fact... Is that your position? Yes, and in fact the Sixth Circuit... This provision of the ADA is to make sure that disabled have access to programs, services, and activities. Access to buildings are dealt with elsewhere, aren't they not? No, access to buildings, Your Honor, are dealt with by the ADA, and in fact... But not this section of the ADA? Well, yes, Your Honor. Section II? Yes, Title II of the ADA, you start with that, and then there are codes of federal regulation that are promulgated under Title II of the ADA, and one of those codes of federal regulation promulgated under the ADA specifically states that you have to have access to a public building, and it says no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from the benefits of a program, service, or activity, and that's under the federal regulations promulgated under Title II. But I want to go back to a point you made, Your Honor, about is the language superfluous, and the Sixth Circuit pretty much said that it is, because in finishing what I was talking about with what the Sixth Circuit said, they said that we must acknowledge that our conclusion, and the conclusion they were talking about there was that the discrimination prohibited by Title II must be with regard to programs, services, or activities, is for the most part a distinction without a difference. For the most part, that's the qualifier as well. I can see that a state agency could have a building that's not accessible, but if they don't give the public services, programs, activities, say a state building is a small state building and all they have is their own employees in it, and they don't deal with the public, and they don't deal with services, programs, or activities, it's hard for me to say that would be a violation of this. And I know you're going to say, well, the Cadillac Place isn't that, but I can see buildings like that, and that the state may get accessible buildings where they do service the public, and they have services, programs, and activities out of those buildings, and they may have some noncompliant ADA buildings where they just have their own people there working in cubicles. And I don't think the ADA prohibits that, but under your interpretation it would, because everything that goes on in that building would be subject to Title II. Well, Your Honor, I would posit that under the hypothetical you gave, I believe that if an employee who worked in that building was an individual who was disabled under the ADA, then accommodations would have to be made for that employee to get in. But, of course, as you pointed out what I would say back, I believe that it's crucial, because if a building is going to be open to the public and the general public, then it has to be made reasonably accommodated for those with disabilities. Now... Counsel, this case arose when they were making improvements? After, Your Honor. I'm sorry? It arose after renovations were made. The significance of that is that under the ADA, if a building was built before the ADA, it's kind of grandfathered in, but if renovations were made after the ADA, then the renovations have to be made in compliance with the ADA. Contained in the language that deals with services? Yes, Your Honor. Services, there was an absolute requirement that you have access to the services, not just for improvements. Well, yes, Your Honor. That just deals with whether the building comes into the purview of the ADA to begin with. If it's a very old building, the ADA came out in 1991, it was enacted, it was enacted in 1990, but enforced in 91. So if a building was built before, then... I'm thinking about this case that arose in, I think it was the Fifth Circuit, had an en banc case dealing with sidewalks. Are you familiar with that case? Not specifically, Your Honor. It had a lot of argument along the lines of whether it was new sidewalks or old sidewalks. But a case that was very analogous to this was the Tennessee v. Lane case in the Supreme Court of the United States in 2004. In that case, individuals were claiming that they did not have access to the upper floors of a state courthouse, and it was because they didn't have elevators to get them up there. And the United States Supreme Court... They also alleged that they wanted to go up there. I mean, your client, if she had alleged that I've got court business in the Michigan Court of Appeals or I practice in the Court of Appeals, I could see that she would have a claim here. But I really looked through this complaint in detail to see if she's really alleged a denial of an activity that she wanted to do, whether she had standing on this, and she just didn't allege it. Well, Your Honor... Yeah, if she had a case pending in that court and she couldn't get in there, she would be denied it. But she didn't say that, that's all. Well, Your Honor, at the time the complaint was brought, it was alleged in paragraph 6 and 7 that the plaintiff worked inside that building and could not access the building in any meaningful or reasonable way because of her disability. So at the time the complaint was brought, that was kind of the forefront of the matter when Jill couldn't get into her own place of employment. Judging purposes, that would be moot. Well, Your Honor, that particular point about her employment, yes, but in the broader sense that Title II says a public building has to be meaningfully and reasonably accessible to those with individuals. So as a matter, as a member of the general public... I didn't realize that was the language that was at issue here. I thought it had to do with whether it was services or not. Well, yes, Your Honor, and then that takes us back to when the Sixth Circuit said... I don't really mean what it says, that it limits it to services, programs, and activities. But you're saying those words don't really mean what they say. Yes, according to the Sixth... We don't look to the dictionary definition. We look to the broader intent or something like that, right? Well, I look right to the Sixth Circuit who said it means everything, but with... Virtually everything. Yes. Don't ignore the qualifiers. Qualifiers mean something. And, Your Honor, I see I am out of time, but if I may respond... Provide elevator service, that fits with the word service, right? Well, yes, and everything does. If you provide access to parking, you could call that a service or not. Absolutely. And going further, the actual language of 12-132 in the ADA doesn't just say you can't... You're denied access to programs, activities, and services. It says then, comma, or otherwise discriminated against. And that's why the Sixth Circuit said that language in the beginning means virtually nothing... Because the language afterwards is a catch-all that encompasses everything that wasn't picked up by the beginning. And I understand, Your Honor, that the court did use a qualifier in saying virtually... But didn't give any examples at all or any indication that there would be a situation where it didn't apply. I think that might have just been safe language. I'm out of time. I wanted to hit very quickly on the... We have some rebuttal time, I think.  Good morning. Police, the court, my name is Gary Grant. I represent the FLE's State of Michigan and Michigan Strategic Fund in this case. Apologize, it seems like I'm losing my voice a little. I'll get my best shot. There are peripheral issues in this case, but really what it boils down to is standing. You know, you've got to show under the ADA that you've been denied access to services, programs, or activities. And while true, the saline case does say that can mean virtually anything, you still have to plead it. You still have to plead that you've been denied access to a particular program, service, or activity. It seems like Ms. Babcock's position is simply that all she needs to do is show that she's disabled, that the building is somehow architecturally deficient, and that that's enough. The problem with that theory is it throws standing completely out the window. I mean, it would have been a simple fix. All she would have had to do is say there's a program in that building, I wanted to have access to that program, service, or activity, and I was frustrated in my attempt to do so. The theory is that the provision of access to everyday activities that she might go to, such as her work, is a service that she's being denied. It's like if the elevators don't have Braille buttons, if she's blind, you could say that I have a service of the elevator. Or I guess she said that it was hard to park there, so she couldn't park. There's nothing like that in the complaint? Your Honor, she identifies problems with the building. She identifies problems with parking. If she said there's no Braille elevator buttons and she's not blind, she wouldn't have standing to challenge that. But there's nothing in there that affects her ability to get around the building? As opposed to where she's going? I understand the argument you're making that there has to be some target activity which is a service provided. But if you interpret broadly service to mean provide a way for you to get around a public space, you could call that a service. I mean, people might, in common jargon, call that a service, couldn't they? You talk about elevator service? In a broad context, Your Honor, I would agree, perhaps. So I don't see how that's a standing. If that's what she's alleging, you can say that's not provided by the statute, but that's enough to get standing. She goes into the building and uses these things and can't use them. Your Honor, that is not... I understand what you're talking about with respect to ability to get around the building, but the building itself, it's not a program service or activity. It's what's contained within the building. What program, what service or activity is it? I don't see how that's a standing argument. That's a she's not covered argument. Are the toilets part of the public building or are they in the individual offices? There are some public toilets. There are also toilets that are... If she can't get to the public toilets, why, you could say it has lavatory service in the building. If she can't get to that, maybe that's not covered because it's not a service somehow in a particular definition of service. I'm not seeing how that's a standing issue. She wants to go to the bathroom, unless she didn't allege. She didn't allege that there was any service program or activity anywhere within that building that she had an issue with access to. She knew it was an issue because we did a motion to dismiss, the state did, and all she did is say, okay, well, can we amend the complaint to deal with 11th Amendment issues? To add for Ex parte Young, she didn't identify any program, service or activity. Was there ever a proposed amended complaint submitted? I don't think there was an actual proposed amended complaint that was submitted, but there was a request that they be allowed to amend it to include individual officials for purposes of Ex parte Young. Nowhere did they mention that they wanted to amend the complaint to include, to actually identify a service program or activity that she was denied access to. Okay, and there was a ruling on the, was there a motion to amend? There was no motion to amend. It was part of their argument that they made to Judge McConnell. Normally on appeal, we review rulings of the district court, and a motion to amend, if that's the grounds that the district court erred reversibly in denying me a motion to amend, we normally require a motion to be filed and a ruling to be made and then an appeal to be made. And here there was no motion, there was no ruling? Well, there was an oral motion during the argument that, look, if you're going to rule against us, Judge Batani, at least let us amend the complaint so we can add individual actors, individual officials for Ex parte Young purposes, and the judge specifically made a ruling that that would have been futile because it doesn't really address the issue of access to service programs or activities. All that's dealing with is an alumnus amendment issue. It was made an oral argument? Yes, it was. She ruled on it? She did, she did rule on it. Normally our review of futility denials of motions to amend is de novo? That's correct. What's the prayer for relief, injunctively, presumably? She wants the building to be up to architectural standards under the ADA. That's where it comes into play when the building was renovated, whether you have to have strict compliance. You've got to comply with the ADA anyway, but strict compliance with architectural regulations depends on when the building was renovated. Now, one of the other points I'd like to talk about is the statute. He talks about the clause in the statute that says, or be subjected to discrimination by any such entity. I guess trying to convince the court that he doesn't have to show access to a program, service, or activity. All he's got to do is show discrimination by any such entity. Well, the problem with that theory is the court's already decided that issue. The Johnson v. City of Salem case, they said it's got to be connected to program, services, or activities, and that's because it relates back to the definition of qualified person with a disability under Title II. Is there any possibility this case could be settled? I see the problem with it is that really she doesn't properly allege that she would deny the program, service, or activity in this building, but because this building does offer program, services, and activities, you're going to have a plaintiff down the road that does come within Title II, and you're going to be back to this argument again that the building doesn't comply with the ADA, and your argument here is, well, I got the wrong plaintiff. So recognizing that down the road, you're going to have a proper plaintiff. Is this a case that could be settled? All they want to do is they want the building to be ADA compliant. You're going to get that kind of a plaintiff. Can we get you guys together and figure out how to do this? Your Honor, we tried extensively to. We had settlement negotiations for a long time. Ultimately, we weren't able to do it. Have you worked with AHRQ? We did, Your Honor. We did. It's not part of the record, obviously, but the fixes, we got a chart from plaintiff about all the problems. The state is working on it. The state has been working on it since this lawsuit began, actually. So I understand what you're saying, just a new plaintiff can come along, but the problems are being fixed. They are being fixed. I think the issue with the settlement was being held to a particular time frame. I think that's really what it revolved around because we have finances. Finances, obviously, are a big part of it to make the fixes, but the fixes are in process. Just briefly, this issue about whether or not employment, the fact that she's employed at the Cadillac place somehow fits within Title II, I will say that that was never advanced as a theory below by Jill Babcock. I think she's waived that argument. There was no briefing on that issue whatsoever. That is a huge issue. If the court is inclined to rule in base its ruling on that issue, I think it would need to be remanded for briefing on that. Isn't that moot since she's not employed there anymore and this is all about perspective relief? I think it would be moot. That's not in the record, although he admitted during his argument she's not employed there, so that would be moot, yes. Can I ask a hypothetical just for the purpose of understanding the scope of your argument? Yes. If you like to go into this building and look in the shop windows or whatever or transfer the subway or whatever it is you do in there and it's harder for you to do because you can't use the elevators and you can't use the restrooms, maybe you can't use the elevators because you're blind and can't feel the buttons or you can't use the restrooms because they don't have those high seats for wheelchair or whatever and you allege that, that would be enough. You don't have to say I'm going to work or I'm even going to go in those buildings. I just like to walk around public areas. Maybe I like to people watch, whatever it is. I want to use that, I don't know, that government space and the ability to do it is curtailed by the handicap inaccessible ways in which the services thereto are applied, something like that. That would work. Your Honor, I think you're exactly right. Like I said earlier. That would be okay. You don't have to actually say I'm going in to work or I'm going to the court. You've got to show somehow that you were frustrated in your wishes. She said for example, not just the fact that she has a case in the court, she for example said it's my right to observe court proceedings. I wanted to go up to court and watch it and I couldn't do it because of these architectural deficiencies. That would have been very easy to do. I'm not an attorney and I just want to go watch the court of appeals sometimes just for the heck of it. That would give her, she would be covered by it I think, the access of the court. It would have been a simple fix. And if she had asked for that to amend on that basis as well rather than this law amendment stuff, that would have been sufficient too. It just seems like it's so poorly pled. It's kind of frustrating because you could see how she could be covered by the statute and how this building has such services, programs, and activities that she could have been in there, but we still require under Trombley a plausible factual allegations that fit the elements. That's what's rather frustrating here. I think I'm agreeing wholeheartedly with my colleague, but I wanted to focus on just the idea that the elevator itself is a service or the toilet itself is a service. Could that be? The sidewalk in the 5th Circuit case. Are you aware of that? I thought the dissent was very persuasive on that. The majority however held that a sidewalk was a service. And I'm thinking sidewalk is a service, then I guess everything is a service. You have to allege you're going to use the sidewalk. I'm not familiar with that case, but just what you just said, Your Honor, there has to be an allegation of that. I wanted to use the sidewalk and I was frustrated in my attempts. You're hypothesizing, it's not before us, but you're hypothesizing that just using the ability to get around in a building might itself be a service in some context. Rather than you always phrasing it like they're going somewhere, like they're going to a theater or they're going to a market or something or a court. But why couldn't you characterize it as this is a public service? We refer to restrooms as services. It happens all the time. You've just got to say, I might use the restroom when I'm walking through the building. That might be enough? Your Honor, it might be. I don't know about just walking through the building, but if one of the services that the building provides is to use the restroom. I think I've been in that building just to walk around. I think there's a difference. If one of the services is to let the public use the restrooms in there, then I think potentially if you plead that properly, then that could be covered. I'm not sure you can just go in, though. It's a restricted building. You can see the shops. Unless you've got actual business to go in, you can't leave the little shop area. That's not in the record, but it's true. I don't even know if that could properly. I guess they could plead anything they wanted to. I don't know that the facts would prove that out. I was thinking this was open to the public building. It's not? No, it's not. The shop area is open, but virtually the entirety of the building and all the services, programs, activities within that building are restricted access. I didn't know that. Thank you. I don't have anything else unless there are any further questions. Is that in the record that it's not open to the public building? I don't believe it is in the record, Your Honor. Thank you. There are parts of it. The Michigan Court of Appeals is open to the public. Yes, yes. I used to work there. If you have business in the building, and what that business could be, you want to see court. It's a public courtroom. The public is allowed to come and listen to the arguments of the Court of Appeals, and they do. You have to show your ID, and then you can go upstairs into the court. It's a public space, and that's all she had to do. I'm an attorney. I want to go listen to the Court of Appeals sometimes, and she would have had a case there. What's perplexing, Your Honor, is the fact that they didn't want to amend the complaint. I mean, it's not a surprise that this was an issue, program services or activities not being identified, because we brought it up in our motion, and they didn't ask to amend to identify that. I don't have anything else unless there are any further questions. Thank you. Thank you. Honorable Judges, the building is definitely a public building, to clear that up. There are restricted offices within that building, but any member of the public can walk off the street, walk into the building. There's a Subway restaurant on the first floor. You don't have to show a bar card or an ID to walk in the building. There's a salon. There's a Chase Bank. There's a credit union. It's absolutely public. Well, that's the first floor. I mean, you can't get up to the – I mean, the Supreme Court used to have the chambers up there, too. I mean, you couldn't get up to that floor. There are restricted accesses in that building that you can't – I mean, you can get to – the public can get some of the building, but not all of it, I guess. Is that fair to say? Yes, Your Honor, and one of our allegations is that the actual ramp entrance to the building is too steep to comply with the ADA, so that would entail just getting into the public first floor to go to the restaurant. Your Honor, is there any chance we can settle this thing? Because, really, if you're – if Ms. Babcock is not the proper plaintiff, the proper plaintiff will come along, and you guys may get the next case, and you'll actually be able to present this, and they won't be able to have the defense that this person has an alleged denial of a service program or activity. So is there a possibility that we can mediate it or settle it, since it's going to have to be ADA compliant down the road anyway? Well, yes, Your Honor, and I – candidly, we worked with a facilitator here at the Sixth Circuit, and I thought we were making great headway, but it got to a point where the state's position wasn't, and I understand the red tape involved, but the state's position was, you know, you can't give us a time frame, and you can't give us specifics about the fixes. So essentially, a settlement agreement that says the state of Michigan will eventually make this building ADA compliant is what we would have had, and that's not a settlement at all. There's no force behind it. They won't give you the time frame to fix it, or you won't tell them what the fixes are? No, I've provided both, time frames up to and including 20 years, in fact, and the specific fixes. I even crossed a bunch off my list that I said, okay, these would be too burdensome. The answer was, from the state, you cannot give us a time frame at all, and you cannot specify the fixes, you know, so it came down to a settlement agreement would have had to be fashioned to say the building must eventually become ADA compliant, and that's too conclusory to be an actual settlement. But if I could, Your Honor, with this appeal, in the last 30 seconds I have, I want to point out, first of all, in Tennessee v. Lane, United States Supreme Court, the Supreme Court said actual physical access, not just access in that you can, you know, have a court-appointed attorney or the right to file a case. Actual physical access to courthouses is a fundamental right under the 14th Amendment. So that right there should be enough to overcome sovereign immunity and be able to go against the state because this is physical access to a building that contains two courthouses inside of it. That was alleged in the complaint. And, Your Honor, my time just ran, but can I finish this last sentence? She never alleged that she wanted to go to the courthouse. And, Your Honor, that's exactly what I wanted to point out. The complaint, you know, even under Twombly and Iqbal, the complaint, it's notice pleading. She said in the complaint, I have this disability. I work in this building. I have continuing, repeating, and recurring difficulties getting access to this building. And then the defects were even listed. So there wasn't a sentence in there that said, and I would love to keep coming back to this building. Why not? Once they brought up this defect in the pleading on their motion to dismiss and put you on notice that you have not pled the denial of access to a program, service, or activity, why not put that in there if that were true? In retrospect, I think it would have been a good safeguard, Your Honor, but I believe strongly in the Sixth Circuit's language that they're saying it doesn't matter. It's a distinction without a difference. Access to a building is access to a building, and that's what we're alleging here. I think it's form over substance to have to claim that you give your disability, you give all the problems with the building, you say that it's repeating, you say in your complaint that you've been having a hard time getting in there, but then, you know, the difference between a fatal complaint and one that's cognizable would be to throw in a sentence that said, and by the way, I want to walk in here even though I don't work here anymore and go to a court, go to a hearing. It's a fundamental right under the 14th Amendment to be able to go into a courthouse. If I can answer any more questions, Your Honor? No. That makes sense to me. Thank you. Thank you. The case will be submitted.